UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                                    CRIMINAL ACTION NO. 5:25-cr-00109

CANDIDO REYES-ROBLES

### MEMORANDUM OPINION AND ORDER

Pending are Defendant Candido Reyes-Robles' Motion to Dismiss Indictment [ECF 53], and Motion to Suppress [ECF 52], both filed January 6, 2026. The Government responded on January 14, 2026. [ECFs 65, 66]. Mr. Reyes-Robles replied on January 30, 2026. [ECFs 69, 70]. The matter is ready for adjudication.

### I.

On September 7, 2015, a Border Patrol Agent stopped Mr. Reyes-Robles near the Mexico-Texas border in Laredo, Texas. [ECF 52 at 1]. During that encounter, the Border Patrol Agent concluded Mr. Reyes-Robles did not have authorization to enter the United States. [ECF 53-3 at 2–3]. Mr. Reyes-Robles was "placed under arrest and advised of [his] rights" and "transported to the Laredo Processing Center for further processing." [*Id.*]. Border Patrol Agent Victor Mendoza ("Agent Mendoza") conducted processing via video conference with Border Patrol Agent Jose Hernandez serving as a witness. [*Id.* at 3]. Following that interview, and pursuant to 8 U.S.C. § 1225(b)(1) and 8 U.S.C. § 1182(7)(A)(i)(I), Agent Mendoza entered an Order of Expedited Removal prohibiting Mr. Reyes-Robles from "entering, attempting to enter, or being in the United States" for five years after the date of his departure. [*Id.*; ECF 53-1 at 2–3]. Mr. Reyes-

1

Robles was removed from the United States on September 8, 2015. [ECF 53-1 at 3]. Ten years later, on June 24, 2025, Mr. Reyes-Robles was indicted pursuant to 8 U.S.C. § 1326(a) for being in the United States without having "obtained the express consent of the Secretary of Homeland Security to reapply for admission to the United States." [ECF 16].

Mr. Reyes-Robles now seeks to challenge the validity of the 2015 Expedited Removal Order inasmuch as (1) he was subject to a warrantless arrest lacking probable cause, (2) no interpreter was used during Mr. Reyes-Robles' communication with Border Patrol, and (3) all of the relevant removal paperwork was typed in English, despite being "purportedly read to him in Spanish." [ECF 53 at 7]. When Mr. Reyes-Robles was stopped by Agent Mendoza in 2015, he explains "he provided his true name, true date of birth and place of birth, that he was a Mexican citizen, admitted that he was not a U.S. citizen and had no documents to permit his entry." [ECF 53 at 4–5]. Further, "[a]s opposed to entering through inspection at a port of entry, he also admitted he had crossed the Rio Grande River into the United States on foot." [*Id.* at 5]. Mr. Reyes-Robles contends that he "did not understand the expedited proceedings. . . or that he had the right to assert an asylum claim based on gang persecution[.]" [*Id.* at 7–8].

Mr. Reyes-Robles asserts the indictment should be dismissed because his removal order was invalid. [ECF 53 at 2]. First, he challenges the validity of the removal order pursuant to § 1326(d)(3) inasmuch as the order was fundamentally unfair because it violated his due process rights. [*Id.* at 7–8].  Additionally, he contends the removal order is invalid because the officer who signed the order was not properly appointed pursuant to the Appointments Clause. [*Id.* at 8]. The Government contends (1) Mr. Reyes-Robles has failed to establish his rights were violated at the border in 2015, and (2) the Border Patrol Agent is not an Officer subject to appointment under the Appointments Clause. [ECF 66 at 3].

## II.

### A.    Motion to Dismiss

When a defendant is charged with a violation of 8 U.S.C. § 1326(a), the Government bears the burden of proving "(1) that the defendant is an alien; (2) that he was deported or removed from the United States; (3) that he thereafter reentered or was found in the United States; and (4) that he lacked permission to reenter or be in the United States." *United States v. Guzman*, 998 F.3d 562, 566 (4th Cir. 2021) (citing *United States v. Ayon-Brito*, 981 F.3d 265, 269 (4th Cir. 2020)). However, pursuant to 8 U.S.C. § 1326(d), a defendant may collaterally attack the deportation order connected to the § 1326(a) violation by showing: "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *United States v. Cortez*, 930 F.3d 350, 356 (4th Cir. 2019), *as amended* (July 19, 2019). "Collateral challenges to removal orders, however, are highly disfavored." *United States v. Alas*, 63 F.4th 269, 277 (4th Cir. 2023). The United States Court of Appeals for the Fourth Circuit has "emphasized that 'the interest in the finality of judgments is sufficiently strong that' 'a collateral challenge' will only be permitted 'in exceptional circumstances.'" *Id.* (quoting *Cortez*, 930 F.3d at 357).

Despite the collateral attack provisions of § 1326(a), 8 U.S.C. § 1225(b)(1)(A)(i) prohibits judicial review of removal orders. *United States v. Villarreal Silva*, 931 F.3d 330, 335 (4th Cir. 2019). As the Supreme Court of the United States has explained, "[t]he statute criminalizing unlawful reentry did not originally allow defendants to raise the invalidity of their underlying removal orders as an affirmative defense." *United States v. Palomar-Santiago*, 593 U.S.

3

321, 324 (2021). However, the bar to collateral attack "'does not comport with the constitutional requirement of due process' insofar as it 'impose[s] a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the [noncitizen] the deportation proceeding may have been.'" *Id.* (quoting *United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987)). Thus, "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the [noncitizen] to obtain judicial review." *Id.* (quoting *Mendoza-Lopez*, 481 U.S. at 839).

Accordingly, "[b]ecause the rules attendant to expedited removal preclude review of the removal order, the defendant in a § 1326 prosecution premised on an expedited removal order under § 1225(b)(1)(A)(i) must be given the opportunity in the § 1326 prosecution to challenge the validity of that order." *Villarreal Silva*, 931 F.3d at 335. "To demonstrate that a removal order used in a § 1326 criminal prosecution is 'fundamentally unfair,' the defendant must show, first, a violation of his due process rights and, second, prejudice caused by the violation." *Id.* at 337 (quoting *United States v. El Shami*, 434 F.3d 659, 664 (4th Cir. 2005); *United States v. Wilson*, 316 F.3d 506, 510 (4th Cir. 2003)). "And, to establish prejudice, the defendant must show that, 'but for the errors complained of, there was a reasonable probability that he would not have been deported.'" *Id.* (quoting *El Shami*, 434 F.3d at 665; *Wilson*, 316 F.3d at 511); *see also United States v. Castro-Aleman*, 141 F.4th 576, 581 (4th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 508 (Jan. 12, 2026); *United States v. Fernandez Sanchez*, 46 F.4th 211, 220 (4th Cir. 2022); *Guzman*, 998 F.3d at 566–67. Pursuant to these well-established principles, Mr. Reyes-Robles must show (1) a violation of his due process rights and (2) prejudice that resulted by virtue of that violation.

### 1. Due Process

"[T]he admission and exclusion of aliens is a sovereign prerogative that is exercised under the Constitution by the political departments." *Guzman*, 998 F.3d at 568. Thus, "an alien seeking initial admission to the United States requests a privilege and has *no constitutional rights* regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.'" *Id.* (emphasis in original) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–60 (1892). Accordingly, Congress maintains the authority to establish procedures relating to removal, and "[w]hatever the procedure authorized by Congress is, *it is due process* as far as an alien denied entry is concerned." *Guzman*, 998 F.3d at 568 (emphasis in original) (quoting *Knauff*, 338 U.S. at 544); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

As codified by Congress in 8 U.S.C. § 1225(a)(1), "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival. . .)" is considered an applicant for admission. Thus, "while an alien *who has already effected an entry* into the United States is entitled to due process. . . an alien who tries to enter the country illegally. . . does not have the same status for due process purposes as an alien who has effected an entry." *Guzman*, 998 F.3d at 569 (emphasis in original) (internal quotations omitted). When an individual is apprehended near the border, he is considered an applicant for admission, and accordingly "treated for due process purposes as if stopped at the border." *Id.* (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). Accordingly, pursuant to the Fourth Amendment, "immigration stops must be based on reasonable suspicion of illegal presence, stops must be brief, arrests must be based on probable cause, and officers must not employ excessive

force. Moreover, the officers must not make interior immigration stops or arrests based on race or ethnicity." *Trump v. Illinois*, 146 S. Ct. 432, 436 n. 4 (2025).

Mr. Reyes-Robles contends the removal order was fundamentally unfair because it violated his due process rights inasmuch as (1) he was "subject to a warrantless arrest without any probable cause" and (2) he had no interpreter during his interactions with Border Patrol, thus he did not understand his rights -- specifically his right to seek asylum.[1] [ECF 53 at 7–8]. Mr. Reyes-Robles fails to provide any factual support for these alleged infirmities. He provides no supplemental information to the Court detailing his encounter at the border, much less detailing his subsequent arrest.

Crucially, Mr. Reyes-Robles challenges the officers' probable cause to arrest him but does not challenge that the officer had reasonable suspicion to stop him at the outset. [*See* ECF 53]. The I-213 form describing the Border Patrol Agent's encounter with Mr. Reyes-Robles explains the following:

> A Laredo Sector Border Patrol Agent encountered the above subject in the Rio Bravo area at/or near Rio Bravo, Texas in Webb County. After a brief interview, it was determined that the above Subject had unlawfully entered into the United States from Mexico and was not at the time inspected or admitted by an Immigration Officer at a port of entry as designated by the Secretary of Homeland Security. Subject further admitted to being a citizen and national of Mexico with no right to be in or remain in the United States legally. The subject was placed under arrest and advised of their rights. The subject was transported to the Laredo Processing Center for further Processing.

[ECF 53-3 at 3–4]. Because Mr. Reyes-Robles does not challenge that the Border Patrol Agent had reasonable suspicion to make the initial stop, the relevant question is whether the Border Patrol

---

[1]More specifically, Mr. Reyes-Robles insinuates he is challenging the factual accuracy of his removal paperwork inasmuch as all paperwork related to his expedited removal is in English, and his interview with Agent Mendoza is memorialized in English, but the I-867A form states Agent Mendoza communicated with Mr. Reyes-Robles in Spanish. [*See* ECF 53-2].

Agent had probable cause to arrest Mr. Reyes-Robles based on the information gathered during the initial stop. As described, the brief interview revealed to the Border Patrol Agent that Mr. Reyes-Robles had "unlawfully entered into the United States from Mexico and was not at the time inspected or admitted." [*Id.*]. With that information, the Border Patrol Agent had probable cause to believe Mr. Reyes-Robles was in the country unlawfully, thus the subsequent arrest was valid.

Further, Mr. Reyes-Robles fails to provide any supplemental information supporting his assertion that (1) Agent Mendoza did not conduct the interview in Spanish, and (2) Mr. Reyes-Robles did not understand his right to seek asylum based on that interview. Without additional evidence, the Court finds no reason to doubt the validity of the statements recorded on Mr. Reyes-Robles' removal paperwork, including Agent Mendoza's memorialization that he advised Mr. Reyes-Robles of his right to seek asylum. Inasmuch as there is no due process violation, the Court does not find the removal order was fundamentally unfair.

## 2. The Appointments Clause

Next, Mr. Reyes-Robles contends the removal order is invalid inasmuch as Border Patrol Agents are officers of the United States subject to appointment under the Appointments Clause. "The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 241 (2018) (quoting U.S. Const. art. II, § 2, cl. 2). It "provides that the President 'shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States." *Wille v. Lutnick*, 158 F.4th 539, 545–46 (4th Cir. 2025) (quoting U.S. Const. art. II, § 2, cl. 2.). However, "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id*.

7

The Appointments Clause "prevents Congress from distributing power too widely by limiting the actors in whom Congress may vest the power to appoint." *Freytag v. Comm'r*, 501 U.S. 868, 885 (1991). "[It] reflects our Framers' conclusion that widely distributed appointment power subverts democratic government. . . The Framers recognized the dangers posed by an excessively diffuse appointment power and rejected efforts to expand that power." *Id*. Further, the Clause "ensures that those who exercise judicial and executive power are appointed and confirmed by the people's elected representatives." *Wille*, 158 F.4th at 551.

The Supreme Court has laid out certain well-established factors for determining whether an individual is an Officer whose appointment must comport with the Appointments Clause. *Lucia*, 585 U.S. at 246 (citing *Freytag*, 501 U.S. at 868 (1991)); *see also Buckley v. Valeo*, 424 U.S. 1 (1976). Specifically, an individual may qualify as an "Officer" when he possesses "significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245 (quoting *Buckley*, 424 U.S. at 126). "While the Supreme Court has not defined the exact boundaries of the 'significant authority' test, it has taken a broad, holistic approach to the inquiry, considering the individual's authority as a whole and comparing it to the authority exercised by individuals previously deemed to be inferior officers." *United States v. Avalos*, 162 F.4th 948, 957 (9th Cir. 2025).

Officers are distinguishable from employees in this right specifically when they "perform more than ministerial tasks." *Freytag*, 501 U.S. at 881–882 (concluding special trial judges for the Tax Court were officers because they "exercise significant discretion" inasmuch as "[t]hey take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders."). Other relevant factors include the consideration of whether the individual serves in an ongoing versus temporary basis, their "duties, salary, and

8

means of appointment", and whether they have authority to "enter a final decision." *Lucia*, 585 U.S. at 246–247 (quoting *Freytag*, 501 U.S. at 881–882).

The Court finds no support for Mr. Reyes-Robles' assertion that Border Patrol Agents fall within the ambit of "Officers" as established under the Appointments Clause. The Court is instead persuaded by the United States Court of Appeals for the Ninth Circuit's reasoning when it concluded deciding Service Officers for the Department of Homeland Security (DHS) were not officers of the United States:

> First and most important, deciding Service officers are limited in the scope of their decisions and have limited authority to issue a [final administrative removal order ('FARO')]. Deciding Service officers are not free to consider any applicable ground for removal. . . but may determine only if the individual: (1) is an alien; (2) has not been lawfully admitted for permanent residence; (3) has been convicted of an aggravated felony; and (4) is deportable. . . Further, deciding Service officers do not possess broad procedural powers. Although they may obtain additional evidence to aid their decisions, administer oaths, and evaluate affidavit(s), documentary information, or other specific evidence, those powers are meaningfully circumscribed by statute and regulation. Deciding Service officers may solicit additional evidence only if the alien submits a written response and the record raises a genuine issue of material fact. Admission of additional evidence does not require an adversarial hearing. Rather, the deciding Service officer considers the additional evidence and makes a determination based on all the evidence.

*Avalos*, 162 F.4th at 959–960. Like deciding Service officers, Border Patrol Agents are limited in their authority when determining whether an applicant for admission is subject to expedited removal.

The expedited removal statute, § 1225(b)(1)(A)(i), permits removal "[i]f an immigration officer determines that an alien. . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7)[.]" Once the officer determines the applicant is inadmissible pursuant to either of those two clauses, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section

1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Accordingly, a Border Patrol Agent may only enter an expedited removal form under § 1225 if the applicant (1) fraudulently seeks admission into the United States as described in 8 U.S.C. § 1182(a)(6)(C), or (2) lacks the requisite documentation as described in 8 U.S.C. § 1182(a)(7). Thus, Border Patrol Agents are severely circumscribed in their authority to make expedited removal decisions.

Based on the authority granted to Border Patrol Agents in § 1225, Mr. Reyes-Robles attempts to liken Border Patrol Agents of today to the immigration inspectors who were considered Officers when *Nishimura Ekiu* was decided in 1892. [ECF 53 at 10 (citing *Nishimura Ekiu*, 142 U.S. at 664)]. This analogy is inapposite. While immigration inspectors in 1892 may have been considered Officers subject to appointment, their roles were substantially different than those of Border Patrol Agents today. As the Ninth Circuit has explained:

> In determining the "right of any alien to land," inspectors determined a broad range of issues, including whether individuals were "idiots, insane persons, paupers or persons likely to become a public charge, persons suffering from a loathsome or a dangerous contagious disease, persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude, polygamists, and also any person whose ticket or passage is paid for with the money of another or who is assisted by others to come. . . ." Act of Mar. 3, 1891, ch. 551, §§ 1, 8, 26 Stat. 1084. Deciding Service officers do not have the same broad authority or exercise the same level of discretion as historic immigration inspectors.

*Avalos*, 162 F.4th at 961. "Today, such determinations are made by [immigration judges]." *Id.* (citing 8 U.S.C. §§ 1229a(a), 1182(a)(4), 1227(a)(5)). Pursuant to § 1229a(b)(1), "[t]he immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). Accordingly, the broad authority held by immigration inspectors when *Nishimura Ekiu* was decided is distinct from the administrative duties granted to Border Patrol Agents making initial contact and preliminary determinations about an applicant's eligibility for admission to the United States.

10

When Mr. Reyes-Robles was stopped near the border in 2015, by his own admission, he had no documents permitting his entry into the United States. [ECF 53 at 4–5]. Accordingly, Agent Mendoza conducted an interview with Mr. Reyes-Robles, recorded the requisite information on the relevant paperwork, and determined Mr. Reyes-Robles was subject to expedited removal pursuant to § 1182(a)(7). [*See* ECFs 53-1, 53-2, 53-3]. There is nothing that indicates, nor does Mr. Reyes-Robles assert as much, that Agent Mendoza exercised any authority outside of that limited scope authorized by Congress in § 1225. Thus, inasmuch as the Court finds no Appointments Clause violation, the expedited removal order remains valid, and the Motion to Dismiss is **DENIED**.

## B.     *Motion to Suppress*

Separately, Mr. Reyes-Robles moves to suppress the statements he made to the Border Patrol Agent in 2015, asserting "the encounter was a seizure which ultimately resulted in un-*Mirandized* admissions by Mr. Reyes-Robles that he was not an American citizen, that he was instead from Mexico, and that he did not have any unexpired papers authorizing his presence inside the United States." [ECF 52 at 1]. Mr. Reyes-Robles contends the Form I-213 summarizing the 2015 encounter fails to establish that Border Patrol Agents had probable cause to seize and question Mr. Reyes-Robles on September 7, 2015. [*Id.*]. Accordingly, Mr. Reyes-Robles contends the statements made during that encounter, and the subsequent removal order are fruit of the poisonous tree resulting from the unlawful arrest of Mr. Reyes-Robles. [*Id.* at 1–2].

The Government opposes suppression, contending Mr. Reyes-Robles was considered an "applicant for admission" at the time of his stop, and thus the stop and subsequent arrest are Constitutional inasmuch as they lay within the due process procedures established by Congress. [ECF 65 at 8–9]. As more thoroughly discussed *supra*, Mr. Reyes-Robles does not

11

appear to challenge that the Border Patrol Agent had reasonable suspicion to stop him near the border in 2015. There is no Constitutional violation because the stop and subsequent detention of Mr. Reyes-Robles align with the procedures laid out by Congress -- and as an applicant for admission to the United States, Mr. Reyes-Robles was not entitled to the same due process protections prior to his admission at the border.

Even assuming a Constitutional violation had occurred, the Court would inquire respecting the remedy, if any. "Ordinarily, when a search violates the Fourth Amendment, the fruits thereof are inadmissible under the exclusionary rule, 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *United States v. Doyle*, 650 F.3d 460, 466–67 (4th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *see also United States v. Jones*, 678 F.3d 293, 305 n. 7 (4th Cir. 2012). Some harbor the mistaken notion that suppression follows ineluctably from a Fourth Amendment violation. That is not the law. Suppression is "not a personal constitutional right," nor contemplated as "redress" for the constitutional wrong done. *Stone v. Powell*, 428 U.S. 465, 486 (1976). Inasmuch as exclusion rests on deterrence, "the harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.'" *Davis v. United States*, 564 U.S. 229, 237 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)).

Mr. Reyes-Robles has made no allegations of conduct by the Border Patrol Agents which would warrant the harsh remedy of exclusion. Based on the information provided by his expedited removal forms, the encounter at the border was "objectively reasonable law enforcement activity." *Id*. Accordingly, Mr. Reyes-Robles' Motion to Suppress is **DENIED**.

**III.**

For the foregoing reasons, the Motion to Dismiss Indictment [**ECF 53**] and the Motion to Suppress [**ECF 52**] are **DENIED**.

The Clerk is **DIRECTED** to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:          July 28, 2026

Frank W. Volk
Chief United States District Judge